IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | INFORMATION |
| Plaintiff, | Crim. No. 22– 182(JL) |
| v. | Violation: |
| JOSEPH FUENTES-FERNANDEZ | 18 U.S.C. §§ 1001(a)(1), 2 |
| and | |
| SALVEMOS A PUERTO RICO, | |
| Defendants. | |

## INFORMATION

The United States charges:

### Introduction

1.      The Federal Election Commission (hereinafter, the "FEC") was an agency and department of the United States with jurisdiction to enforce the limits, prohibitions, and requirements of the Federal Election Campaign Act of 1971, as amended, 52 U.S.C. § 30101, *et seq.* (hereinafter, the "Election Act"). The Election Act regulated the influence of money on politics. At all times relevant to the Information, the Election Act and associated regulations set forth the following limitations and reporting requirements:

a.      The Election Act applied to political committees that financed political activity in connection with both federal and non-federal elections, and which managed both federal and non-federal activities from a single bank account.

b.      The Election Act required such political committees to file periodic

1

reports of receipts and disbursements identifying, among other things, each person who contributed or donated to such committee during the relevant reporting period whose contributions or donations had an aggregate amount or value in excess of $200 within the calendar year, together with the date and amount of any such contribution or donation. These periodic reports, which were filed with the FEC and made publicly available, were intended to provide citizens with a transparent record of the true sources of funds flowing into the political committee.

2.      Beginning in or about March 2020 and continuing until in or about November 2020, **JOSEPH FUENTES-FERNANDEZ** and **SALVEMOS A PUERTO RICO** circumvented the Election Act through the use of shell nonprofit corporations, which purported to make legal donations to political committee **SALVEMOS A PUERTO RICO** in their own names rather than in the names of the true sources of the funds. By concealing the identities of real donors to **SALVEMOS A PUERTO RICO**, and by falsely reporting that the shell nonprofit corporations were the donors when in fact they were not, **FUENTES** and **SALVEMOS A PUERTO RICO** deprived the public of information about the true source of hundreds of thousands of dollars flowing into the Commonwealth of Puerto Rico's political system.

## Relevant Individuals and Entities

3.      **FUENTES**, a Virginia resident, was the President and Treasurer of **SALVEMOS A PUERTO RICO**.

4.      **SALVEMOS A PUERTO RICO** was an independent expenditure-only political committee, or "Super PAC," that was registered with the FEC and was organized

primarily to support the 2020 election campaign of Public Official-1. **SALVEMOS A PUERTO RICO**'s Statement of Organization filed with the FEC stated that the committee "supports/opposes more than one Federal candidate." At all relevant times, **SALVEMOS A PUERTO RICO** had a single bank account. **SALVEMOS A PUERTO RICO** was therefore obligated to file periodic reports about receipts and disbursements with the FEC.

5.   Nonprofit-1 was a social welfare nonprofit organization exempt from taxation under the provisions of § 501(c)(4) of the United States Internal Revenue Code.

6.   Nonprofit-2 was a social welfare nonprofit organization exempt from taxation under the provisions of § 501(c)(4) of the United States Internal Revenue Code.

7.   Public Official-1 was an elected public official in the executive branch of the government of Puerto Rico.

8.   Individual-1 was an associate of Public Official-1 and significant fundraiser who sought to obtain donations in support of the 2020 election campaign of Public Official-1.

9.   Individual-2 was the Secretary of Nonprofit-1 and Nonprofit-2.

10.   Individual-3 was a consultant and attorney.

<u>**COUNT 1**</u>
Scheme to Falsify and Conceal Material Facts
18 U.S.C. §§ 1001(a)(1) and 2

11.   The preceding paragraphs of this Information are hereby re-alleged and incorporated into this Count.

12.   From in or about March 2020 and continuing until in or about November 2020, in the District of Puerto Rico and elsewhere, the defendants **FUENTES** and **SALVEMOS A PUERTO RICO** knowingly and willfully falsified, concealed, and covered up, by a trick,

scheme and device, material facts; to wit, they made and caused to be made material false, fictitious, and fraudulent statements or representations in a matter within the jurisdiction of the executive branch of the United States, by causing **SALVEMOS A PUERTO RICO** to make false statements in reports of receipts and disbursements filed with the FEC on or about July 9, 2020, which falsely listed the names of straw donors Nonprofit-1 and Nonprofit-2 as the true sources of the donations; and by continuing to funnel money through straw donors Nonprofit-1 and Nonprofit-2 to **SALVEMOS A PUERTO RICO** exclusively because this would enable **SALVEMOS A PUERTO RICO** to make further false statements misrepresenting the identities of the true sources of donations in reports of receipts and disbursements with the FEC.

### Purpose of the Scheme

13.     The purpose of the scheme was for **FUENTES** and **SALVEMOS A PUERTO RICO** to maximize donations to **SALVEMOS A PUERTO RICO**, in support of Public Official-1, while avoiding the "true source" reporting requirements of the Election Act.

14.     By ensuring that these donors were anonymous, **FUENTES** and **SALVEMOS A PUERTO RICO** schemed to and did deprive the people of the Commonwealth of Puerto Rico and the FEC of information concerning the "true source" of hundreds of thousands of dollars in political spending that was provided to **SALVEMOS A PUERTO RICO**.

### Manner and Means of the Scheme

15.     **FUENTES** formed **SALVEMOS A PUERTO RICO** as the primary Super PAC supporting Public Official-1.

16.     **FUENTES** and others, including Individual-2, then formed Nonprofit-1 and Nonprofit-2 as shell, conduit entities that would accept donations from individuals and

4

entities seeking to support Public Official-1 in Public Official-1's 2020 election campaign. Nonprofit-1 and Nonprofit-2 were created for the sole purpose of funding **SALVEMOS A PUERTO RICO**, and not to function as legitimate nonprofit organizations dedicated to improving social welfare. Donations to Nonprofit-1 and Nonprofit-2 were generally forwarded to **SALVEMOS A PUERTO RICO**, which spent the funds on advertising and other expenses in support of Public Official-1.

17.     **SALVEMOS A PUERTO RICO**, in turn, reported to the FEC that the source of the donations was Nonprofit-1 and Nonprofit-2, rather than reporting the true donors who provided the funds.

18.     **FUENTES**, Individual-1, and Individual-2 communicated with each other through text message, email, and Internet-based messaging applications to discuss aspects of their scheme to avoid reporting the true source of these donations.

### Acts in Furtherance of the Scheme

#### Setting Up the Entities

19.     On or about March 9, 2020, **FUENTES** signed and submitted an application with the Commonwealth of Virginia to reinstate a corporation that was later renamed **SALVEMOS A PUERTO RICO**.

20.     On or about May 27, 2020, **FUENTES** signed and submitted a Statement of Organization with the FEC for **SALVEMOS A PUERTO RICO**, officially registering the entity as a Super PAC.

21.     On or about June 10, 2020, Nonprofit-1 and Nonprofit-2 were incorporated as nonprofit entities in the Commonwealth of Puerto Rico. These entities, which referred to themselves as "foundations," were incorporated within seven minutes of each other and listed

the same mailing address. Bank records reflect that both organizations also listed the same corporate officers. In a text message sent two days prior, **FUENTES** explained: "I asked them to open [Nonprofit-1 and Nonprofit-2] so that there is more than one entity making contributions and avoid appearances of being connected."

22.     On or about June 17, 2020, Nonprofit-1 and Nonprofit-2 opened bank accounts at Bank-1. The bank account opening documents listed Individual-2 as the Secretary of Nonprofit-1 and Nonprofit-2.

<u>The June 2020 Donations</u>

23.     Between on or about June 18, 2020, and on or about June 22, 2020, three entities provided funds (via check or electronic funds transfer) totaling approximately $200,000 to Nonprofit-1.

24.     Between on or about June 15, 2020, and on or about June 23, 2020, two individuals and two entities collectively provided funds via separate checks totaling approximately $110,000 to Nonprofit-2.

25.     On or about June 24, 2020, Individual-2 sent a text message to **FUENTES** stating: "Tomorrow we will generate the electronic transfers to SAPR."

26.     Between on or about June 22, 2020, and on or about June 25, 2020, the above-described checks were deposited into the bank accounts for Nonprofit-1 and Nonprofit-2 (with the exception of one individual's check, which was deposited later).

27.     On or about June 25, 2020, Nonprofit-1 wired approximately $175,000 to **SALVEMOS A PUERTO RICO** and Nonprofit-2 wired approximately $75,000 to **SALVEMOS A PUERTO RICO**.

28.     On or about July 9, 2020, **FUENTES** filed a Report of Receipts and

Disbursements with the FEC on behalf of **SALVEMOS A PUERTO RICO**. The report listed only two donations. First, the report stated that **SALVEMOS A PUERTO RICO** had received $175,000 from Nonprofit-1. Second, the report stated that **SALVEMOS A PUERTO RICO** had received $75,000 from Nonprofit-2. The report did not provide any information about the true source of these donations, which—as **FUENTES** was aware—in fact came from one individual and five entities. Nonprofit-1 and Nonprofit-2 were merely conduits for these funds.

29.     On or about August 9, 2020, **FUENTES** sent a text message stating: "I haven't wanted to have any type of communication because you don't know if the feds have the lines intercepted. You have to handle this very carefully."

<u>The October 2020 Donations</u>

30.     Between on or about October 15, 2020, and on or about October 20, 2020, four entities collectively provided checks totaling approximately $220,000 to Nonprofit-2.

31.     On or about October 16, 2020, Individual-2 sent a text message to **FUENTES** and others stating: "As soon as I have an accounting of (i) what has been or will be sent to the PAC for deposit and (ii) what is going to be deposited in [Nonprofit-1 and Nonprofit-2] to donate to the PAC, I'll let you know."

32.     Additionally, on or about October 16, 2020, **FUENTES** sent a text message to a potential donor who asked about whether donors could remain anonymous. **FUENTES** explained, "I have to inform [the FEC] who but you can give them through an entity and that way we do not disclose who is behind the donation." He added: "You can use a third party to not disclose the true donor."

33.     Also on or about October 16, 2020, **FUENTES** sent a text message to

Individual-2 and others stating: "Send me the bank account info for [Nonprofit-1 and Nonprofit-2] so that . . . people who are donating can remain anonymous." Individual-2 then provided wiring instructions for Nonprofit-1 and Nonprofit-2 to **FUENTES**.

34.     **FUENTES** subsequently sent the potential donor the wiring instructions for Nonprofit-1 and Nonprofit-2, and texted the donor: "It's totally anonymous in the accounts I gave you. If you want[,] call me."

35.     On or about October 19, 2020, two entities provided checks totaling approximately $75,000 to Nonprofit-1.

36.     On or about October 16, 2020, and October 21, 2020, the $220,000 in checks to Nonprofit-2 and the $75,000 in checks to Nonprofit-1 were deposited in their respective bank accounts.

37.     On or about October 19, 2020, Individual-2 sent a text message to **FUENTES** and others stating: "Transfers for $75k and $10k made today." On or about October 20, 2020, Nonprofit-1 wired approximately $10,000 to **SALVEMOS A PUERTO RICO** and Nonprofit-2 wired approximately $75,000 to **SALVEMOS A PUERTO RICO**.

38.     On or about October 21, 2020, Nonprofit-1 wired approximately $50,000 to **SALVEMOS A PUERTO RICO** and Nonprofit-2 wired approximately $70,000 to **SALVEMOS A PUERTO RICO**. That same day, Individual-2 sent a text message to **FUENTES** and others stating: "I just generated transfers for $120k ($50k + $70k)."

<u>Individual-2's Explanation of the Scheme</u>

39.     On or about October 13, 2020, Individual-2 explained to Individual-3 that Individual-3 could support Public Official-1 by providing funds to either Nonprofit-1 or Nonprofit-2, which would in turn remit the funds to **SALVEMOS A PUERTO RICO**.

40.     On or about October 23, 2020, Individual-2 explained that a check Individual-3 was providing to Nonprofit-2 would go "to the foundation, and it is the foundation who will, at the right moment, make the donation." Individual-2 further explained that "if you check the PAC's FEC, the only reported donations are the ones from the foundation."

<u>The November 2020 Donations</u>

41.     Between on or about October 21, 2020, and on or about November 2, 2020, Nonprofit-2 also received approximately $307,000 in donations from six individuals and three entities.

42.     On or about November 16, 2020, Nonprofit-2 wired approximately $40,000 to **SALVEMOS A PUERTO RICO**.

All in violation of 18 U.S.C. §§ 1001(a)(1), 2.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## FORFEITURE ALLEGATION
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(D)

43. The preceding paragraphs of this Information are hereby re-alleged and incorporated in this Allegation.

44. Pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(D), the United States gives notice to the defendants **JOSEPH FUENTES-FERNANDEZ** and **SALVEMOS A PUERTO RICO** that in the event of a conviction for the offense charged in Count One of this Information, all property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from such offense, is subject to forfeiture.

### Money Judgment

45. Defendants are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

### Substitute Assets

46. Defendants are notified that if property subject to forfeiture, as a result of any act or omission of Defendants,

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of Defendants up to the total value of

the property subject to forfeiture pursuant to 21 U.S.C. § 853(p), as incorporated by reference

in 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1).

W. STEPHEN MULDROW
United States Attorney

COREY AMUNDSON
Chief, Public Integrity Section

By: SETH ERBE
Digitally signed by SETH ERBE
Date: 2022.04.28 15:22:15 -04'00'

Seth A. Erbe
Assistant United States Attorney
Chief, Financial Fraud and Public
Corruption Section

By: JONATHAN JACOBSON
Digitally signed by JONATHAN JACOBSON
Date: 2022.04.28 18:45:20 -04'00'

Jonathan E. Jacobson
Trial Attorney